UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT        :
                                                           ss. New Haven, September 8, 2020
County of New Haven           :

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Lisa MacNamara, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As an FBI Special Agent, I have directed, conducted, and participated in many criminal investigations of various federal laws. During the course of these investigations, I have executed search and seizure warrants, interviewed witnesses, and conducted surveillances. Additionally, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with the authority to execute federal arrest warrants. I have been employed by the FBI as a Special Agent for approximately 24 years. Prior to becoming a Special Agent with the FBI, I was a sworn police officer in Madison, Connecticut and New Haven, Connecticut for seven years. Since November 2006, I have been assigned to the New Haven Division of the FBI where my primary duty is the investigation of bank robbery offenses, as well as other reactive cases.

2. I am an investigative or law enforcement officer of the United States within the meaning of l8 U.S.C. § 2510(7) in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in l8 U.S.C. § 2516.

3. Currently, I am the case agent in an investigation involving a series of commercial larcenies of luxury retail stores that have occurred between approximately October 4, 2019 and September 3, 2020 in multiple states across the New England regional area. The criminal

1

network believed responsible for these larcenies is still currently active, and the crimes are effectively ongoing. As of the date of this affidavit, law enforcement has identified that tens of thousands of dollars' worth of clothing, apparel, and other retail goods and accessories have been stolen. The statements contained in this affidavit are based, in part, on the information provided by Special Agents and Task Force Officers of the FBI, as well as officers from other law enforcement state and local agencies, and on experience and training of the affiant. Much of the information I know about the details of the individual thefts is derived from what has been reported or listed in local law enforcement reports.

4. I submit this affidavit in support of the following: (1) criminal complaint authorizing the arrest of JAHLIIL PARROTT for Interstate Transportation of Stolen Property, in violation of 18 U.S.C. § 2314, Conspiracy, in violation of 18 U.S.C. § 371, and Aiding and Abetting, in violation of 18 U.S.C. § 2.

5. The information contained in this affidavit is based on my personal participation in the investigation, as well as information other law enforcement officers provided to me. This affidavit sets forth facts and evidence that are relevant to the requested criminal complaint and arrest warrant, but it does not set forth all of the facts and evidence that have been gathered during the course of the investigation of this matter. Rather, I have set forth only those facts that I believe are necessary to establish probable cause.

6. For the reasons outlined in this Affidavit, there is probable cause to believe, and I do believe, that PARROTT has engaged in a violations of 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 371 (conspiracy) and 18 U.S.C.§ 2 (aiding and abetting) (hereinafter the "TARGET OFFENSES").

7. This affidavit is intended to show merely that there is sufficient probable cause to search and seize evidence and does not set forth all of my knowledge about this matter, nor does it set forth all of my knowledge about each of the underlying thefts and their connection to any suspects who have already been identified by local law enforcement in this case.

## RELEVANT STATUTES

8. Title 18, United States Code, Section 2314, states in pertinent part:

> Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . . Shall be fined under this title or imprisoned not more than ten years, or both.

9. Title 18, United States Code, Section 371, states in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

10. Title 18, United States Code, Section 2, provides in pertinent part:

> Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

## PROBABLE CAUSE

### *General Criminal Scheme*

11. My investigation into PARROTT and others involves a series of approximately 30 larcenies of various clothing retail stores that occurred regularly between October 2019 and September 2020. The most recent larceny attributed to the criminal network described herein occurred on September 3, 2020. The thefts occurred at retail stores located in the States of Massachusetts, Connecticut, New York, New Hampshire, Vermont and Maine. The suspects involved in the thefts are all suspected to be residents of Connecticut. The retail stores that have

been targeted by the suspects include, but are not limited to: Ralph Lauren, T.J. Maxx, Marshall's, Dick's Sporting Goods, Tommy Hilfiger, Burberry, Balenciaga, American Eagle, and Macy's Department Store.

12. The method used by the suspects to commit the larcenies is best described as a "grab-and-go." Specifically, the suspects arrive by vehicle to a victim retail store and enter the store as if they arrived to shop. Once in the store, the suspects grab as many items of clothing as they can carry and then move quickly out of the store without paying for the merchandise. The suspects have largely evaded pursuit by on-scene loss prevention officers.

13. The "grab-and-go" thefts usually involve 2-3 suspects entering the stores, while at least one suspect waits outside the store in a "getaway" vehicle. The vehicle is frequently parked as close as possible to the store entrance, to allow for the suspects to make a quick exit with the stolen merchandise. On several occasions, nearby law enforcement identified the getaway vehicle and attempted to apprehend the suspects. In multiple instances, the operator of the getaway vehicle has driven erratically away from the scene of the crime. In at least one instance, the suspects evaded law enforcement in a vehicle pursuit when they refused to pull over for the police vehicle.

14. Video surveillance has captured the suspects leaving the scenes of the retail stores in at least three distinct vehicles: a black Honda Accord, silver Acura, and a silver Nissan Rogue. Video surveillance also revealed that the suspects have used several different rental cars and at least three stolen license plates, so as to conceal the true registration of the vehicles used to commit the crimes.

15. The types of consumer goods stolen by the suspects include, but are not limited to: clothing, outerwear, footwear, sweatshirts, sweatpants, jackets, backpacks, jewelry, handbags,

sleepwear and/or lingerie and perfume. I know from my review of the investigation, including my review of police reports and of reports generated by loss prevention offices of victim retail stores, that the value of the amount of goods stolen and transported by the suspects exceeds $95,000 in total, and often exceeds $5,000 on a single occasion.

### *Identification of the Suspects*

16. Law enforcement has used video surveillance, eyewitness accounts, information posted on social media, vehicle registration information, and information from a confidential informant (described in further detail herein) to identify the primary suspects. Based on the investigation to date, investigators believe that the conspiracy to commit the TARGET OFFENSES includes approximately nine co-conspirators. These nine individuals consistently appear on retail store surveillance footage, and/or have some connection to the getaway vehicle used in the commission of the crimes.

17. Of those nine co-conspirators, several have already been arrested by local law enforcement for larceny charges related to this investigation. JAHLIIL PARROTT ("PARROTT"), year of birth 1997, of Windsor, Connecticut currently has state charges pending for four counts of Larceny 3, one count of Interfering, and one count of Retail Theft, stemming from an arrest on December 16, 2019.

18. Based on this investigation and my review of surveillance and booking photographs of PARROTT, as well as in-person interviews that I have conducted with PARROTT, PARROTT is well known to me and I am able to recognize him in photos and surveillance videos.

### *Theft of Ralph Lauren Polo Store on November 1, 2019 in Lee, Massachusetts*

19. On November 1, 2019, PARROTT, along with two other co-conspirators whose identities are known by name to me, can be seen entering a Polo Ralph Lauren Factory Store in Lee, Massachusetts. The group grabbed merchandise valued at approximately $7,899.64 and ran out of the store without paying. Based on my investigation and familiarity with the members of this conspiracy, upon review of the store's video surveillance, I have identified the three individuals involved in this theft and I have observed that PARROTT can be clearly seen on video grabbing a stack of clothing and running out of the store without paying.

20. A subsequent search of PARROTT's cell phone records revealed that he was in Lee, Massachusetts in the vicinity of the Polo Ralph Lauren Factory store at the time of this incident, and that he traveled back to Connecticut immediately following the incident. I know from my investigation that PARROTT and his co-conspirators are residents of Hartford, Connecticut. Further, as described below, I know that PARROTT himself has admitted to bringing stolen clothing and other merchandise back to Hartford in order to sell it "on the street."

### *Attempted theft of Macy's on November 26, 2019, in Manhasset, New York*

21. On November 26, 2019, PARROTT and a female co-conspirator whose identity is known in full to me, were captured on video entering a Macy's department store located at 1100 Northern Boulevard, Manhasset, New York. PARROTT and the female co-conspirator entered the store and began gathering a large number of Polo Ralph Lauren brand merchandise. After selecting the merchandise, PARROTT and James began running for the door and passed all points of purchase. At this point, Macy's loss prevention officers attempted to apprehend PARROTT. PARROTT began struggling with one of the loss prevention officers, and, in an apparent attempt to retain possession of the merchandise he had been holding, bit the loss

6

prevention officer on the hand causing injury. His co-conspirator fled the scene that day and was not apprehended.

22. PARROTT was ultimately arrested for the incident at Macy's, along with his connection to other thefts in the region. In December 2019, I interviewed PARROTT in person while he was in custody following his arrest. In the interview, PARROTT identified himself in surveillance photographs of several thefts within the southern New England region that had been perpetrated by the same group of co-conspirators. PARROTT detailed that one or two of the other co-conspirators would ask him whether he was "ready to eat," or words to that effect, which was code for asking whether he was interested in robbing another store. PARROTT described that his co-conspirators would then "Google search" for a store location and then drive there. Then, one or more of the group would enter the store, grab as much merchandise as they could carry, and run out. He stated that he and his co-conspirators would then sell the merchandise on the street in Hartford. PARROTT did not identify any out-of-state physical locations that he and his co-conspirators would either store or sell the stolen goods, and related, in sum and substance, that the stolen goods were re-sold in the Hartford area. Further, because PARROTT and all of his co-conspirators lived in the Hartford area, I have concluded that merchandise stolen by PARROTT and his co-conspirators from out-of-state would have necessarily had to be transported back to Connecticut following the theft.

23. The value of the merchandise that PARROTT and his co-conspirator conspired to steal from Macy's on November 26, 2019 totaled approximately $8,976.00.

### *Theft of Ulta Beauty Store on September 3, 2020 in North Attleboro, Massachusetts*

24. The most recent theft involving the criminal network, and specifically involving PARROTT, occurred on September 3, 2020 at an Ulta Beauty store in North Attleboro,

Massachusetts. According to reports, at approximately 2:14 p.m. on that date, PARROTT along with a male and female co-conspirator, entered the store and walked directly to a section of the store that sells perfumes. When they arrived at that section, the three individuals all fill up handbaskets that they had been carried and then run past all points of purchase and out of the store and into the parking lot where an apparent "getaway" car was waiting for them. An inventory of the store revealed that PARROTT and the two co-conspirators left the store with approximately 94 bottles of perfume, worth approximately $99.97, on average, each, for an initial estimated value of approximately $9,397.00 worth of total loss.

25. I have reviewed photographs from surveillance footage from the Ulta Beauty store theft on September 3, 2020, and confirmed that PARROTT and his co-conspirators can be clearly seen in the footage.

## CONCLUSION

26. Based on the foregoing, there is probable cause to believe, and I do believe, that from on or about October 4, 2019 to September 3, 2020, in the District of Connecticut, PARROTT has engaged in violations of the Target Offenses and that a warrant should issue for his arrest.

_____
Lisa MacNamara
Special Agent, FBI

The truth of the foregoing affidavit has been attested to me by Special Agent Lisa MacNamara over the telephone on this 8th day of September, 2020, at New Haven, Connecticut.

_____

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE